**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

STEVE PASCHALL,

Plaintiff,

v.                                                                    Case No. 2:17-cv-02280-MSN-tmp

MEMPHIS LIGHT, GAS, &
WATER DIVISION,

Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant's Motion for Summary Judgment filed on March 1, 2019 in the Western District of Tennessee.  (ECF No. 92 at PageID 251.)  Plaintiff responded to Defendant's Motion on September 26, 2019.  (ECF No. 120 at PageID 454.)  Defendant filed a reply on October 24, 2019.[1]  (ECF No. 125 at PageID 767.)  For the following reasons, Defendant's Motion is **GRANTED**.

## BACKGROUND

Defendant, Memphis Light, Gas, & Water Division ("MLGW"), is a municipal utility company owned by the City of Memphis, Tennessee.  (ECF No. 1 at PageID 3; ECF No. 7 at

---

1. Defendant also filed a Motion to Strike on November 1, 2019.  (ECF No. 127.)  As will be discussed, evidence offered to support or oppose a motion for summary judgment is not a pleading.  Fed. R. Civ. P. 7.  Therefore, "[m]otions to strike evidence offered in support of summary judgment are construed by this Court as an evidentiary objection pursuant to Local Rule 56.1(e)."  *Grose v. Lew*, No. 2:11-cv-02562, 2014 WL 3779082, at *25 (W.D. Tenn. July 30, 2014).

PageID 37.)  Plaintiff, Steve Paschall, a white male, was an employee of MLGW from December 1989, (ECF No. 1 at PageID 3; ECF No. 7 at PageID 38), to July 2016.  (ECF No. 1 at PageID 14; ECF No. 7 at PageID 42.)    On July 13, 2016, Defendant terminated Plaintiff for allegedly discriminating against a subordinate on the basis of sex.  (ECF No. 1 at PageID 11; ECF No. 7 at PageID 40–41.)  Following his termination, Plaintiff filed this action against Defendant on April 24, 2017, alleging that Defendant discriminated against him on the basis of his race and sex in violation of Title VII of the 1964 Civil Rights Act, a violation of 42 U.S.C. § 1981 of the Civil Rights Act of 1866, a denial of Family Medical Leave Act ("FMLA") rights, and a state tort claim for intentional and negligent infliction of emotional distress.  (ECF No. 1 at PageID 1.)  Plaintiff has since explicitly abandoned his claims under the FMLA, his claim for negligent infliction of emotional distress, (ECF No. 120 at PageID 455), and his claim under 42 U.S.C. § 1981 claim. (ECF No. 120-1 at PageID 484–85.)  Accordingly, only Plaintiff's claims under Title VII and the tort of intentional infliction of emotional distress will be discussed.

While it is undisputed that Plaintiff was terminated in July of 2016, (ECF No. 1 at PageID 11; ECF No. 7 at PageID 40–41), the circumstances surrounding Plaintiff's termination and the events leading up to it, which span the course of several years, are contested.  The substance of Plaintiff's claims arose in January 2013 when Alonzo Weaver, a black male, (ECF No. 120-2 at PageID 503; ECF No. 93 at PageID 288), hired Virgil Deanes, also a black male, (ECF No. 1 at PageID 4), as Manager of Gas and Engineering Operations, thus making Virgil Deanes Plaintiff's immediate supervisor.  (ECF No. 1 at PageID 4; ECF No. 7 at PageID 38.)

Plaintiff alleges that both Deanes and Weaver engaged in discriminatory conduct against Plaintiff on the basis of his race after Deanes became his superior.  Specifically, Plaintiff alleges that Deanes "criticized him in almost every aspect of his work" and "discredited [Plaintiff's]

2

knowledge and experience" by "intentionally and repeatedly direct[ing] [Plaintiff] to address questions and issues that Deanes himself was responsible for." (*Id*. at PageID 4–5.) Defendant denies these allegations. (ECF No. 7 at PageID 38.) Plaintiff makes similar allegations against Weaver, (ECF No. 1 at PageID 5), and Defendant also denies these allegations. (ECF No. 7 at PageID 38.)

Beginning in September of 2013, Plaintiff began a period of FMLA leave that resulted in his absence from work, with the exception of a period from September 27 to November 25, 2013, until March 13, 2014. (ECF No. 120-2 at PageID 504–05; ECF No. 93 at PageID 288–89.) On May 6, 2014, two months after Plaintiff returned to work, Deanes issued him a written reprimand.[2] (ECF No. 93 at PageID 289; ECF 120-2 at PageID 505.) The parties dispute the basis for this reprimand. Defendant asserts that the reprimand resulted from Plaintiff violating Defendant's Contract Procurement Policy. (ECF No. 93 at PageID 289.) Conversely, Plaintiff alleges that Deanes recruited another employee to "go after" Plaintiff and that only he was punished despite other employees allegedly similar conduct. (ECF No. 120-2 at PageID 505.) Plaintiff concedes that he did not file a grievance regarding this reprimand under Defendant's dispute resolution policy, nor did he file an EEOC complaint; however, Plaintiff asserts that he attempted to file an EEOC complaint but Steve Day, Manager of Labor and Employee Relations, rebuffed him and suggested he talk to Jerry Collins, President and CEO of MLGW. (ECF No. 120-2 at PageID 506.) As to the reprimand itself, while Plaintiff concedes that he did sign it, he claims that he did so under duress while simultaneously claiming to have "literally no recall of the reprimand." (*Id*.) It

---

2. It is undisputed that this reprimand did not impact Plaintiff's compensation or opportunities to apply for other open positions within MLGW. (ECF No. 93 at PageID 289; ECF No. 120-2 at PageID 505.)

should be noted that Plaintiff also submits he "has no recall of the events in 2014 and 2015 . . . ." (*Id*. at PageID 507.)

According to Defendant, Plaintiff's work performance continued to decline and Deanes gave him an overall performance score of "two" (2) because he did not satisfactorily complete a project and neglected his responsibilities.  (ECF No. 93 at PageID 288.)  In response, Plaintiff claims Deanes lacked any basis to criticize his performance because Deanes did not know about Plaintiff's assignment and that the project was "intense and complex."  (ECF No. 120-2 at PageID 504.)

In November of 2014, Plaintiff began a period of sick leave that lasted until February 24, 2015.  (ECF No. 93 at PageID 292; ECF No. 120-2 at PageID 512.)  Following the exhaustion of Plaintiff's sick leave, MLGW placed him on salary continuation until December 28, 2015.  (*Id*.) It is undisputed that Plaintiff did not work during 2015 except for the four days remaining in the year following his return on December 28, 2015.  (ECF No. 93 at PageID 292; ECF No. 120-2 at PageID 513.)

After Plaintiff returned to work, Defendant alleges that he told a subordinate, Carol Whelchel, that she would not be a good fit for a forthcoming position at MLGW because as a woman she could not stand up for herself.  (ECF No. 93 at PageID 285.)  Plaintiff denies saying this and claims instead that he told her the hardest part of that position would be resistance from construction and maintenance crews, and that these crews would likely push back harder against Whelchel because of her sex.  (ECF No. 120-2 at PageID 490.)  Plaintiff claims that he made these comments to Whelchel because he "wanted her to be prepared to deal with that."  (*Id*.)  The following day, Whelchel spoke to Plaintiff about these comments, though the parties dispute the nature of this conversation.  (ECF No. 93 at PageID 285; ECF No. 120-2 at Page ID 490–91.)

Defendant alleges that Whelchel spoke to Paula Mitchell in the Labor and Employee Relations Department about Plaintiff's statements. (ECF No. 93 at PageID 286.) Plaintiff claims no knowledge of this meeting. (ECF No. 120-2 at PageID 495.) What is clear is that on April 18, 2016, Whelchel filed a formal EEOC complaint against Plaintiff. (ECF No. 93 at Page ID 286; ECF No. 120-2 at PageID 497.) Defendant maintains an EEO policy that ensures equal access to jobs regardless of sex, and prohibits discrimination against any employee because of race, sex, color, religion, age, disability, national origin, veteran's status, or political affiliation. (ECF No. 93 at PageID 287; ECF No. 120-2 at PageID 498.) This policy further requires supervisors to fulfill their responsibilities in a manner consistent with its terms and that "[d]iscriminatory behavior by a supervisory employee will be considered a violation of this policy and will result in appropriate disciplinary action." (ECF No. 93 at Page ID 287; ECF No. 120-2 at PageID 498.)

Following Ms. Whelchel's complaint, two employees of Defendant's human resources department, Virginia Leonard and Paula Mitchell, conducted an investigation into the allegations against Plaintiff. (ECF No. 93 at PageID 286; ECF No. 120-2 at PageID 497.) While Plaintiff received notification of this investigation, he disputes that he was notified within three working days as required by MLGW policy. (ECF No. 120-2 at PageID 497.) At the investigation's conclusion, the investigative committee found that Plaintiff's statements indicated an attitude of discrimination against females. (ECF No. 93 at Page ID 287; ECF No. 120-2 at PageID 499.) Consequently, Steve Day, a white male, terminated Plaintiff. (ECF No. 93 at Page ID 287; ECF No. 120-2 at PageID 501.) Although Plaintiff challenges whether Day decided to terminate him, he concedes that Day signed Plaintiff's termination letter. (ECF No. 120-2 at PageID 501.) Plaintiff also disputes that Alonzo Weaver and Virgil Deanes did not influence the decision to terminate him and further alleges that "the Title VII allegations against him were concocted by

MLGW in retaliation for his whistleblower activities and/or on account of race discrimination and retaliation."  (ECF No. 120-2 at PageID 500.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment — and the Court to grant summary judgment — "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting the presence or absence of genuine dispute of material fact must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  To decide a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden to show that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing'—that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth

specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence to support its claim that disputed material facts remain that must be evaluated by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010). A mere scintilla of evidence does not suffice; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374.

The Court's role is limited to determining whether there is a genuine dispute about a material fact; that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. This determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252–53.

Finally, should the nonmoving party fail to make a sufficient showing on an essential element of its case that it has the burden to prove, the movant will be entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court construes Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

7

**DISCUSSION**

Before the Court considers the merits of Defendant's Motion for Summary Judgment, it first addresses Defendant's Motion to Strike, as well as Defendant's assertion that some of Plaintiff's claims are time barred. This approach clarifies the evidence that the Court will consider.

I.      **The Court will not consider any assertion of fact made without proper support or that would be otherwise inadmissible for summary judgment purposes.**

In addition to its Motion for Summary Judgment, Defendant has also filed a Motion to Strike under Federal Rule of Civil Procedure 56(c)(2). (ECF No. 127.) There, Defendant argues that much of Plaintiff's response in opposition to Defendant's motion for summary judgment should be stricken because it is inadmissible hearsay and violates various rules of civil procedure and evidence.[3] (*Id.*) Defendant asks the Court to disregard the introductory sections of Plaintiff's Response, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, and Plaintiff's Affidavit. (*Id.* at PageID 792). Alternatively, Defendant asks the Court to strike or disregard certain portions of these submissions for summary judgment purposes. (*Id.*) While the Court will not set aside entire pieces of Plaintiff's response, it will disregard any assertions of fact in Plaintiff's response, as well as any evidence offered in opposition to summary judgment, that violate operative procedural rules, or would be inadmissible for summary judgment purposes.

Rule 56 requires a party must support its factual assertions by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[3] Specifically, Fed. R. Civ. P. 56(c)(2) and Fed. R. Evid. 801, 802. (*See* ECF No. 127 at PageID 797.)

Fed. R. Civ. P. 56(c)(1). Where a party employs affidavits or declarations to support an assertion, these "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

To decide a motion for summary judgment, the Court notes that "[t]he proffered evidence need not be in admissible form, but its content must be admissible." *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997). Thus, the usual evidentiary prohibition on hearsay applies to summary judgment, absent a recognized exception. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) ("[H]earsay evidence cannot be considered on a motion for summary judgment.")

Where one party argues that the opposing party has submitted improper evidence, "[s]ubdivision (c)(2) [of Rule 56] provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56 advisory cmte. note to 2010 amend. Because the objection functions like an objection at trial, "[t]here is no need to make a separate motion to strike." *Id.*; *see Daucus v. Commer. Marine Servs.*, 2018 U.S. Dist. LEXIS 219274, *5 (W.D. Tenn. Sept. 6, 2018) ("This Court . . . construes motions to strike evidence offered in support [or opposition] of motions for summary judgment as evidentiary objections pursuant to Local Rule 56.1(e)."); *see also Williams v. Reg'l Adjustment Bureau*, No. 10-cv-2305, 2012 WL 432191, at *9 (W.D. Tenn. Sept. 19, 2012). Thus, the Court need not enter a separate order on Defendant's Motion to Strike. (ECF No. 127.) Instead, the Court will consider Defendant's Motion as an evidentiary objection under Local Rule 56.1(e).

## II.    Plaintiff's Claims from 2013 and 2014 are Time-Barred.

Defendant argues that many of Plaintiff's claims from 2013 and 2014 are time-barred because Plaintiff failed to timely file a charge under 42 U.S.C. § 2000e-5(e)(1).  (ECF No. 92-1 at PageID 257–58.)  Plaintiff responds that these claims arise from an ongoing unlawful employment practice and are therefore not barred.  (ECF No. 120-1 at PageID 473.)

Under 42 U.S.C. § 2000e-5(e)(1), a claim will be time-barred when the claimant fails to file a charge within the statutory period.  Where the employee resides in a state with an agency that has the authority to deal with these matters and has filed a charge with the agency, a plaintiff must then file a charge with the EEOC within 300 days after the incident that allegedly violated Title VII.  42 U.S.C. § 2000e-5(e)(1).  Although the statute clearly identifies the period to file a charge, courts have periodically clarified when an unlawful employment practice occurs.  *See generally AMTRAK v. Morgan*, 536 U.S. 101 (2002).

The term "practice" in Title VII "appl[ies] to a discrete act or single occurrence, even when it has a connection to other acts."  *Id*. at 111.  "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'  A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it."  *Id*. at 110.  Although they may be connected, "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period."  *Id*. at 112.  However, these time-barred claims "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue . . . ."  *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977).

"A hostile work environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice'."  *Morgan*, 536 U.S. at 117.  "It does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period."  *Id.*  When one act that contributes to the hostile work environment occurred

within the statutory filing period, the entire period for the hostile work environment may be considered. *Id.* This rule does not apply to situations in which an act unrelated to a hostile work environment has been abused to salvage an otherwise untimely claim. The Supreme Court provided the following scenarios to illustrate this point:

> (1) Acts on days 1-400 create a hostile work environment. The employee files the charge on day 401. Can the employee recover for that part of the hostile work environment that occurred in the first 100 days? (2) Acts contribute to a hostile environment on days 1-100 and on day 401, but there are no acts between days 101-400. Can the act occurring on day 401 pull the other acts in for the purposes of liability? In truth, all other things being equal, there is little difference between the two scenarios as a hostile environment constitutes one "unlawful employment practice" and it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole. Nor, if sufficient activity occurred by day 100 to make out a claim, does it matter that the employee knows on that day that an actionable claim happened; on day 401 all incidents are still part of the same claim. *On the other hand, if an act on day 401 had no relation to the acts between days 1-100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee can not recover for the previous acts, at least not by reference to the day 401 act.*

*Id.* at 118 (emphasis added). Thus, a plaintiff may not bootstrap an otherwise untimely hostile work environment claim by filing a claim within the 180 or 300 days that is unrelated to the hostile work environment.

Because Tennessee has an agency with the authority to deal with hostile work environment claims, the Tennessee Human Rights Commission ("THRC"), and Plaintiff did file a charge with both the THRC and EEOC, Plaintiff timely filed his EEOC charge. Although Plaintiff asserts that his claims from 2013 and 2014 are not time-barred because they all contributed to a hostile work environment, (ECF No. 120-1 at PageID 472–75), Plaintiff's arguments are unpersuasive. As discussed below, Plaintiff has failed to support his hostile work environment claim with sufficient evidence to withstand summary judgment. Because Plaintiff's hostile work environment claim

does not survive summary judgment, Plaintiff cannot prevent the 2013 and 2014 claims from being time-barred.

### III.   Plaintiff's Claims for Discrimination on the Basis of Race and Sex Fail.

Title VII prohibits employers from treating an employee or applicant differently based on their race, sex, religion, color, or national origin.  42 U.S.C. § 2000e-2(a)(1); *see also Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020) (holding that the prohibition against sex discrimination includes an employee's or applicant's sexual orientation).  Such disparate treatment violates Title VII.  *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771–73 (2015).  Title VII also prohibits an employer from establishing policies or procedures that appear "fair in form, [but] are discriminatory in operation."  *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971).  This constitutes a disparate impact that also violates Title VII.  *Abercrombie & Fitch Stores, Inc.*, 575 U.S at 771–73.  The remainder of the analysis focuses on disparate treatment because a disparate impact violation has not been alleged.

To bring a Title VII claim for disparate treatment, "a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment."  *Johnson v. Kroger Co.*, 319 F.3d 858, 864–65 (6th Cir. 2003). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both."  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000) (quoting *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)).[4]  Direct evidence is that which "does not require the fact finder to draw any inferences to reach the conclusion that unlawful discrimination was at least a motivating factor."  *Martinez v. Cracker Barrel Old Country*

---

[4] Cited as *Univ. of Cincinnati* to avoid confusion because the plaintiff's name in that case is the same as the plaintiff in the above-cited *Johnson v. Kroger Co.* case.

*Store, Inc.*, 703 F.3d 911, 916 (6th Cir. 2013). "Circumstantial evidence . . . is proof that does not

on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable

inference that discrimination occurred." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th

Cir. 2011) (quoting *Wexler v. White's Fine Furniture*, 317 F.3d 564, 570 (6th Cir. 2003)). Where

only circumstantial evidence has been offered, courts apply the familiar *McDonnell Douglas-*

*Burdine* test. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as clarified by *Texas*

*Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). This Sixth Circuit has explained:

> Under the *McDonnell Douglas* framework, the plaintiff faces the initial burden of
> presenting a prima facie case of unlawful discrimination. The establishment of a
> prima facie case creates a rebuttable presumption of discrimination and requires the
> defendant to "articulate some legitimate, nondiscriminatory reason" for taking the
> challenged action. If the defendant is able to satisfy this burden, the plaintiff must
> then prove that the proffered reason was actually a pretext to hide unlawful
> discrimination.

*Johnson*, 319 F.3d at 866 (citing *Univ. of Cincinnati*, 215 F.3d at 572).

Normally a plaintiff must first establish his membership in a protected class, *Univ. of*

*Cincinnati*, 215 F.3d at 572; however, because this case alleges reverse discrimination, this

requirement has been supplanted here. A plaintiff alleging reverse discrimination must present (1)

"background circumstances supporting the inference that plaintiff's employer was the unusual

employer who discriminated against non-minority employees . . . ." *O'Donnell v. City of*

*Cleveland*, 838 F.3d 718, 726 (6th Cir. 2016). Thereafter, a plaintiff must show: (2) that he was

qualified for his position and performed it satisfactorily; (3) that despite his qualifications and

performance, he suffered an adverse employment action; and (4) that he was either replaced by a

person outside of the protected class or had been treated disparately from similarly situated

minority employees. *Univ. of Cincinnati*, 215 F.3d at 572–73.

As to the first requirement "the mere fact that an adverse employment decision was made by a member of a racial minority is sufficient to establish the first prong of the *prima facie* case." *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008). Alternatively, a plaintiff "can present 'evidence of [defendants'] unlawful consideration of race as a factor in hiring in the past justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely'." *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 256 (6th Cir. 2002) (quoting *Parker v. Baltimore & O.R.*, 652 F.2d 1012, 1018 (D.C. Cir. 1981).

To satisfy the second prong, a plaintiff "must prove that he was performing his job at a level which met his employer's legitimate expectations." *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991) (quoting *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990). Further, "[t]o be 'qualified' for a position means that the individual 'was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative'." *Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir. 1979).

Next, the third prong may be satisfied when there "is a materially adverse change in the terms or conditions of employment because of the employer's actions." *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 625 (6th Cir. 2013). "Termination, decrease in wage or salary, change in title, diminished material responsibilities, or a material loss of benefits are all examples of a materially adverse change." *Mensah v. Mich. Dep't of Corrections*, 621 F. App'x 332, 334 (6th Cir. 2015). Materially adverse action does not include negative performance reviews or critical feedback from superiors when unaccompanied by some materially adverse change in employment conditions. *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999) ("If every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title

14

VII would be triggered by supervisor criticism or even facial expressions indicating displeasure.")

Ultimately, to trigger an adverse employment action, "such action must result in a materially

adverse change in the terms and conditions of the plaintiff's employment, such as a decrease in

wage or salary." *Jones v. St. Jude Med. S.C. Inc.*, 823 F. Supp. 2d 699, 727 (6th Cir. 2011).

Lastly, regarding the fourth and final prong required to prove a *prima facie* discrimination

case:

> "... plaintiff need not demonstrate an exact correlation with the employee receiving
> more favorable treatment." Rather Plaintiff's burden is to show that she and her
> comparator are similarly situated in "all relevant respects." In the context of
> disparate disciplinary treatment, the Sixth Circuit has explained that the "plaintiff
> and his proposed comparator must have engaged in acts of 'comparable
> seriousness."

*Wright v. Memphis Police Ass'n.*, No. 2:14-cv-02913, 2016 LEXIS 96522, at *53–54 (citing

*Martinez*, 703 F.3d at 916–17). When analyzing this element, courts examine whether allegedly

similarly situated individuals "dealt with the same supervisor, have been subject to the same

standards and have engaged in the same conduct without such differentiating or mitigating

circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*

at * 54 (quoting *Martinez*, 703 F.3d at 916-17. Where a plaintiff fails to make a *prima facie*

showing, this concludes the analysis because that plaintiff has not met his initial burden under

*McDonnell Douglas*.

### A. Plaintiff's Claim of Discrimination on the Basis of Sex and Race Fail Because He is Unable to Establish a Prima Facie Case of Discrimination.

Here, direct evidence has not been presented. (ECF 120-1 at PageID 472.) Therefore,

under the *McDonnell-Douglas* burden shifting analysis, Plaintiff must meet his initial burden to

present a *prima facie* discrimination case. He has not done so.

First, Plaintiff fails to show "background circumstances supporting the inference that plaintiff's employer was the unusual employer who discriminated against non-minority employees." *O'Donnell*, 838 F.3d at 726 (quoting *Courie v. ALCOA*, 832 N.E. 2d 1230, 1235 (Ohio Ct. App. 2005). While "the mere fact that an adverse employment decision was made by a member of a racial minority is sufficient to establish the first prong of the *prima facie* case[,]" *Arendale*, 519 F.3d at 603, Plaintiff does not offer any evidence that this occurred here. Indeed, in Plaintiff's Response to Defendant's Motion for Summary Judgment, (ECF No. 120-1), Plaintiff claims to present background circumstances in a single sentence: "Plaintiff establishes the first element of his claims for race and/or sex discrimination by showing that MLGW has never before terminated an employee for discriminating against another employee based on race or sex." (*Id.* at PageID 476.) As Defendant correctly notes, this sentence only establishes that Plaintiff had been the first person terminated for alleged conduct that violated Defendant's EEO policy. (ECF No. 125 at PageID 770.)

To satisfy the first step in the analysis, a plaintiff need only show that "an adverse employment decision was made by a member of a racial minority . . . ." *Arendale*, 519 F.3d at 603. Notwithstanding Plaintiff's stated assertion that he satisfied this analytical step, the only evidence Plaintiff offers to support his claim is an allegation that Deanes, a black male, should have participated in the investigation that led to Plaintiff's termination. (ECF No. 120-2 at PageID 500). As Defendant correctly notes in its Motion to Strike, (ECF No. 127-1 at PageID 801), this assertion not only lacks a citation to the record, as required by LR 56.1(b), but Plaintiff offers no evidence that Deanes should have or did participate in the investigation. Plaintiff does not dispute that Steve Day, a white male, suspended him, and that Day signed his termination. (*Id.* at PageID 501.) Plaintiff has not provided "background circumstances supporting the inference that

16

plaintiff's employer was the unusual employer who discriminated against non-minority employees." *O'Donnell*, 838 F.3d at 726 (quoting *Courie*, 832 N.E. 2d at 1235).  Therefore, Plaintiff fails to satisfy the first prong in proving a *prima facie* discrimination case.

Plaintiff has also failed to offer evidence that "he was performing his job 'at a level which met his employer's legitimate expectations'." *Ang*, 932 F.2d at 548 (quoting *Huhn v. Koehring*, 718 F.2d 239, 243 (7th Cir. 1983)).  Despite Plaintiff's assertions that "he knew his stuff," (ECF No. 120-1 at PageID 476), and "is not a stupid person," (*Id*. at PageID 477), it is reasonable to believe that MLGW has a legitimate expectation that its employees will not violate the organization's EEO policy.  Presumably, that is why it developed this policy in the first place. Carol Whelchel alleges Plaintiff violated the policy by making a sexist remark.  (ECF No. 120-9 at PageID 675.)  Following this allegation, an investigation occurred into its veracity that resulted in Plaintiff's suspension and termination after a determination that Plaintiff discriminated against Carol Whelchel.  (*Id.* at 678.)  Beyond his speculation why one alleged harasser, Deanes, should have been a part of this investigation, (ECF No. 120-2 at PageID 500), Plaintiff has not submitted substantive evidence that the investigation was flawed or unfair.  Plaintiff had been accused and subsequently found to have engaged in discriminatory conduct that violates his employer's EEO policy.  Therefore, Plaintiff cannot be said to have been "performing his job at a level which met his employer's legitimate expectations." *Ang*, 932 F.2d at 548 (quoting *Koehring*, 718 F.2d at 243).

Additionally, because MLGW terminated Plaintiff after the investigation concluded he violated his employer's EEO policy, it cannot be said that he "was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative." *Wilkins*, 790 F.2d at 521 (quoting *Loeb*, 600 F.2d at 1013).  While termination undoubtedly

qualifies an adverse employment action, *Wright*, 2016 U.S. Dist. LEXIS 96522 at *53, Plaintiff's termination occurred because his employer found he violated its EEO policy.  To satisfy the third prong in the analysis, a plaintiff must meet the second.  Because Plaintiff cannot show that he performed his job to his employer's satisfaction, he also cannot create an inference that the adverse action he suffered resulted from anything other than his violation of MLGW's EEO policy.

With respect to the final step in the analysis, Plaintiff fails to identify any similarly situated parties and does not provide any evidence that he suffered discrimination.  Accordingly, he has not carried his burden and his claims do not survive summary judgment.  While Plaintiff acknowledges that similarly-situated employees must be "similar in all relevant respects[,]" (ECF No. 120-1 at PageID 479), he proceeds to state "[t]his is not the only way to meet the test" without citing any statute, caselaw, or rule to support his assertion.  (*Id.*)  Instead, Plaintiff offers to the Court conclusory allegations absent citations to the record.  "Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment."  *Arendale*, 519 F.3d at 605 (citing *Travelodge Hotels, Inc. v. Govan*, 155 Fed. App'x 235, 237 (6th Cir. 2005) (holding that a brief replete with "conclusory allegations" proved insufficient to withstand summary judgment.))  Plaintiff has not provided the Court with any substantive evidence that he was disparately treated from another similarly situated MLGW employee.

More broadly, with respect to alleged disparate treatment itself, Plaintiff states that he does not recall any discriminatory comments made by Weaver or specific instances of discrimination by Deanes, both black males.  (ECF No. 120-2 at 507.)  Instead, Plaintiff alleges that Deanes harassed him, (ECF No. 120-1 at PageID 459), or that Deanes recruited another employee to "go after" him, (ECF No. 120-2 at PageID 505), which, as Defendant correctly points out in its Motion to Strike, violate LR 56.1(b) because they do not cite to the record. (ECF No. 127-1 at PageID

801).  Where Plaintiff does allege conduct that could create an inference that disparate treatment occurred,[5] these allegations once again come as personal beliefs, speculation, and conjecture that do not defeat Defendant's Motion.  *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004); *see also Moore v. City of Memphis*, 175 F. Supp. 3d 915, 942 (W.D. Tenn. 2016) ("The proof with which Plaintiffs support their contentions must be more substantial than speculation . . . .")

Plaintiff has failed to make a *prima facie* discrimination case at each analytical step.  *First*, he failed to plead background circumstances that support the inference that Defendant discriminates against non-minority employees because he did not provide any evidence to indicate it.  Indeed, Plaintiff acknowledges that Steve Day, a white male, suspended him and signed his termination letter.  (ECF No. 120-2 at PageID 501.)  *Second*, Plaintiff has not shown that he satisfied his employer's expectations because he failed to meet his employer's expectation that he would abide MLGW's EEO policy.  Following Carol Whelchel's accusation that Plaintiff made sexist remarks towards her, an investigation into the matter subsequently found that Plaintiff had done so.  (ECF No. 120-9 at PageID 675.)  While Plaintiff disputes this result, (ECF No. 120-2 at PageID 499), he should have objected during the investigation, not in federal court nearly four years after the alleged comments had been made.  *Third*, while Plaintiff has no doubt suffered an adverse employment action, this action did not occur despite his satisfactory job performance; rather, it occurred because an investigation concluded that he violated his employer's EEO policy.  Consequently, Plaintiff also fails to satisfy the third prong.  *Lastly*, Plaintiff has not provided the

---

5. "Deanes was intent on showing Paschall who was boss. This was retaliation for Plaintiff's protected activities, namely asserting that the position was not awarded based on objective, non-discriminatory reasons. Deanes was chosen on account of his race, black."  (ECF No. 120-1 at PageID 472); "From the moment Deanes won the position over Paschall, Deanes went after Steve Paschall. He belittled him. He retaliated against him." (*Id*. at 478.)

Court with any similarly situated MLGW employees to whom the Court could compare him. Moreover, he has not provided any evidence beyond conjecture to support an inference that discrimination induced his termination.  For these reasons, Plaintiff has not set forth a *prima facie* discrimination case. The Court need not proceed further into the *McDonnell Douglas* analysis.

### IV.    Plaintiff's Hostile Work Environment Claim Fails Because He is Unable to Establish a *Prima Facie* Case for a Hostile Work Environment.

A hostile work environment exists where "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . .'"  *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (quoting *Los Angeles Dep't of Water and Power v. Manhart*, 435 U.S. 702, 707 (1978.  Like discrimination claims, hostile work environment claims are also analyzed under the *McDonnell Douglas* burden shifting framework.  *See Clay v. UPS*, 501 F.3d 695, 706 (6th Cir. 2007).  To establish a *prima facie* case for a hostile work environment claim, a plaintiff must show: "(1) she is a member of a protected class; (2) she was subjected to unwelcomed racial harassment; (3) the harassment was race based; (4) the harassment unreasonably interfered with her work performance by creating an environment that was intimidating, hostile, or offensive; and (5) employer liability."  *Id*.  Similar to a claim for discrimination, where a plaintiff makes a claim for reverse discrimination, the first step of a establishing a prima facie case involves showing "background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority."  *Arendale*, 519 F.3d at 604–05 (quoting *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003)).  "After the moving party has satisfied its burden, the burden shifts to the non-moving party . . . ."  *Id*. at 593.  "If the [non-moving party] carries this burden, the plaintiff must then prove by a preponderance of the evidence that the

reasons offered by the employer were a pretext for discrimination." *Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001).

Here, Plaintiff has not produced sufficient evidence to survive summary judgment. In Plaintiff's Response to Defendant's Motion, Plaintiff cites three cases and informs the Court that *Harris*, 510 U.S. 17 (1993), *Clay*, 501 F.3d 695 (6th Cir. 2007), and *Williams v. GMC*, 187 F.3d 553 (6th Cir. 1999) are all "on point" before providing several paragraphs filled with conclusory allegations, speculation, and conjecture. (ECF No. 120-1 at PageID 485–86.) As discussed previously, such an approach will be "insufficient to survive summary judgment." *Lewis*, 355 F.3d at 533; *see also Arendale*, 519 F.3d at 605 ("In order to survive summary judgment, Plaintiff cannot rely on conjecture or conclusory accusations."). Plaintiff's response concerning a hostile work environment simply lacks substance and instead contains "nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992).

Courts need not "scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.2d 247, 251 (7th Cir. 1995)); *see also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992) (quoting *InterRoyal Corp v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)) (The nonmoving party's burden at summary judgment "might 'not require the nonmoving party to designate facts by citing specific page numbers' . . . [but] 'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies'."). A court is not "required to make Plaintiff's

21

arguments for him, as such a mandate would 'require the courts to explore exhaustively all potential claims . . . [and] would transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party'." *Knowles v. Astrue*, No. 4:09-cv-02540, 2011 WL 1900457, *28–29 (N.D. Ohio Mar. 24, 2011).  Plaintiff has only provided the Court with a list of three cases that Plaintiff purports apply here followed by several paragraphs of arguments replete with speculation and conjecture.  This approach does not weather Defendant's Motion for Summary Judgment.

As to Plaintiff's claim for intentional infliction of emotional distress, "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 Fed. App'x 368, 372 (6th Cir. 2013).  Plaintiff has wholly failed to address this claim beyond stating that it survives. (ECF No. 120 at PageID 455.) Plaintiff has not provided discussion, evidence, or argument to support his *ipse dixit*.  Therefore, the Court finds his claim for intentional infliction of emotional distress has been abandoned.

## **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED**, this 11th day of January 2022.

s/ Mark S. Norris
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE